UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD GARREFFA, <br><br>                   Plaintiff, <br><br>   -against- <br><br>GREENLANE HOLDINGS, INC., AARON LOCASIO, ADAM SCHOENFELD, NEIL CLOSNER, RICHARD TANEY and JEFF UTTZ, <br><br>                Defendants. | CASE NO.: _____ |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Richard Garreffa ("Plaintiff"), on behalf of himself, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.  This is an action brought by Plaintiff against Greenlane Holdings, Inc., ("Greenlane" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Greenlane, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed merger of KushCo Holdings, Inc. ("KushCo") with Greenlane.

2.  On March 31, 2021, KushCo and Greenlane entered into an Agreement and Plan of

Merger (the "Merger Agreement"), providing for Greenlane's acquisition of KushCo, pursuant to a merger between Greenlane and KushCo, through Greenlane's wholly owned subsidiaries Merger Sub Gotham 1, LLC, ("Merger Sub 1"), and MergerSub Gotham 2, LLC. Pursuant to the Merger Agreement, Greenlane and KushCo will combine through a merger of Merger Sub 1 with and into KushCo with KushCo as the surviving corporation and a wholly owned subsidiary of Greenlane("Initial Surviving Corporation") (such merger, "Merger 1") and a merger of the Initial Surviving Corporation with and into Merger Sub 2 with Merger Sub 2 as the surviving limited liability company and a wholly owned subsidiary of Greenlane (the "Proposed Transaction").

3.  Pursuant to the terms of the Merger Agreement, KushCo's stockholders will receive approximately 0.2546 shares of Greenlane Class A common stock for each share of KushCo common stock they own ("Base Exchange Ratio"). The Base Exchange Ratio is expected to result in KushCo stockholders owning approximately 49.9% of the combined company's common stock and Greenlane stockholders owning approximately 50.1% of the combined company's common stock. If Greenlane issues additional securities prior to the closing of the Proposed Transaction in connection with any acquisitions or capital raising transactions, the Base Exchange Ratio will be adjusted such that Greenlane's existing stockholders maintain an aggregate interest of at least 50.1%, and not more than 51.9%, in the combined company ("Merger Consideration").

4.  On May 27, 2021, in order to convince Greenlane's public common stockholders to vote in favor of the Proposed Transaction, Defendants, together with KushCo took a step forward and authorized the filing of a materially incomplete and misleading Joint Form S-4 Registration Statement/Proxy (the "Registration Statement") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.  In particular, the Registration Statement contains materially incomplete and

misleading information concerning: (i) financial projections for Greenlane and KushCo; and (ii) the key inputs for the financial analyses performed by Canaccord Genuity Corp. ("Canacord"), and to support their fairness opinions.

6.     The Proposed Transaction is expected to close early in the third quarter of 2021 and the special meeting of the Company's stockholders to vote on the Proposed Transaction can be scheduled at any time.  It is therefore imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the special meeting of Greenlane stockholders so Plaintiff can properly exercise his corporate voting rights.

7.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Plaintiff and Greenlane's public common stockholders sufficiently in advance of the special meeting of the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

8.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible

under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Indeed, Greenlane's common stock is listed and traded on the Nasdaq Global Market ("NASDAQ"), which is also headquartered in this District.

## PARTIES

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the holder of Greenlane common stock.

12.     Defendant Greenlane is a Delaware corporation that maintains its principal place of business at 1095 Broken Sound Parkway, Suite 300, Boca Raton, Florida. Greenlane's common shares are traded on the NASDAQ under the ticker symbol "GNLN."

13.     Individual Defendant Aaron Locasio ("Locasio") is the Chief Executive Officer and chairman of the Board of Greenlane.

14.     Individual Defendant Adam Schoenfeld (Schoenfeld") is Chief Strategy Officer and is a director of Greenlane.

15.     Individual Defendant Neil Closner ("Closner") is a director of Greenlane.

16.     Individual Defendant Richard Taney ("Taney") is a director of Greenlane.

4

17.     Jeff Uttz ("Uttz") is a director of Greenlane.

18.     The defendants identified in paragraphs 13 through 17 are collectively referred to herein as the "Individual Defendants" or the "Board."  The Individual Defendants together with Greenlane, are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.     Background of the Company and the Proposed Transaction

19.     Greenlane is one of the largest global sellers of premium cannabis accessories and liquid nicotine products in the world.  The Company operates as a third-party brand accelerator and a distribution platform for consumption devices and lifestyle brands serving the global cannabis, hemp-derived CBD, and liquid nicotine markets.  Greenlane has partnered with brands through all stages of the product lifecycle, and serve an expansive customer base covering over 8,000 locations, including over 1,100 licensed cannabis businesses and 4,100 smoke and vape shops.

20.     Greenlane has partnered with many of the industry's leading players including PAX Labs, Grenco Science, Storz & Bickel, Firefly, DaVinci, Santa Cruz Shredder, and Cookies. The Company has also developed a world-class portfolio of its own proprietary brands ("Greenlane Brands") that Greenlane believes over time will deliver higher margins and create long-term value. These Greenlane Brands include VIBES Rolling Papers, Pollen Gear, the Marley Natural accessory line, Aerospaced & Groove grinders, K. Haring Glass Collections, and Higher Standards, which serves as both upscale product line and an innovative retail experience with flagship stores at New York City's famed Chelsea Market and a location in California's iconic Malibu Village.

21.     The Company has a diverse source of revenue from both business-to-business

("B2B") transactions through wholesale distribution to retailers and business-to-consumer ("B2C") transactions through e-commerce and brick-and-mortar retail sales in three geographically distinct operating segments, which include our United States, Canada, and European operations.

22.    On April 20, 2021, Greenlane's Board caused the Company to enter into the Merger Agreement with KushCo.   Pursuant to the terms of the Merger Agreement, Greenlane's stockholders will receive 0.1240 shares of Parent common stock for each share of Greenlane common stock they own.

23.    On March 31, 2021 Greenlane and KushCo issued joint a press release announcing the Proposed Transaction, which stated in relevant part:

### Greenlane and KushCo Announce Transformative Merger, Creating the Leading Ancillary Cannabis Company and House of Brands

The Transaction will Bring Together Two of the Pioneering Cannabis Ancillary Product and Services Companies, with a Combined 25 Plus Years of Operating History

Enhanced Scale with Over $250 Million of Projected Pro Forma 2020 Revenue and Improved Operating Leverage to Drive ~$15- $20 Million in Expected Cost-Saving Synergies and Increased Profitability

Robust and Innovative Offerings Including Proprietary Owned Brands and Exclusive Third-Party Products

Highly Complementary Portfolio of Products and Services Provides Potential for Cross-Selling Opportunities and Rapid Growth in Fast-Paced Industry

\* \* \*

BOCA RATON, Fla. and CYPRESS, Ca., March 31, 2021 – Greenlane Holdings, Inc. ("Greenlane") (NASDAQ: GNLN) and KushCo Holdings, Inc. ("KushCo") (OTCQX: KSHB) today announced that they have entered into a definitive merger agreement (the "Merger Agreement"), pursuant to which KushCo will become a wholly owned subsidiary of Greenlane (the "Transaction").

**Proposed Transaction**

Under the terms of the Merger Agreement, KushCo's stockholders will receive approximately 0.2546 shares of Greenlane Class A common stock for each share of KushCo common stock (the "Base Exchange Ratio"), subject to adjustment as described below. The Base Exchange Ratio is expected to result in KushCo stockholders owning approximately 49.9% of the combined company's common stock and Greenlane stockholders owning approximately 50.1% of the combined company's common stock. The Base Exchange Ratio represents a 6.3% premium to KushCo's 20-day volume weighted average closing price ending on March 30, 2021.

The Merger Agreement permits Greenlane to continue to pursue opportunistic and strategic priorities prior to the closing of the Transaction, including engaging in certain contemplated acquisitions and capital raising transactions. If Greenlane issues additional securities prior to the closing of the Transaction in connection with any acquisitions or capital raising transactions, the Exchange Ratio will be adjusted such that Greenlane's existing stockholders maintain an aggregate interest of at least 50.1%, and not more than 51.9%, in the combined company.

Existing Greenlane stockholders will continue to hold their existing shares of Greenlane common stock; however, in connection with the Transaction, shares of Greenlane Class C common stock will be converted into shares of Greenlane Class B common stock on a 3-to-1 basis. Thereafter, there will be no shares of Greenlane Class C common stock authorized or outstanding, which will have the effect of retiring the enhanced voting rights of Greenlane's majority stockholder.

The Transaction is intended to be tax free to KushCo, Greenlane and their respective shareholders for United States federal income tax purposes.

The Transaction has been unanimously approved by the boards of directors for both Greenlane and KushCo, and a special independent committee consisting entirely of Greenlane's independent and disinterested directors (the "Special Committee"), which was appointed by the Greenlane board of directors. The boards of directors of Greenlane and KushCo have unanimously recommended that stockholders approve the Transaction.

**Strategic Rationale and Financial Benefits**

- **Establishes the leading ancillary cannabis company delivering more value to customers across the supply chain**: The combined company will serve a premier group of customers, which includes many of the leading

multi-state-operators and licensed producers, the majority of the top smoke shops in the United States, and millions of consumers.

- **Optimized platform with significant potential synergies**: The Transaction is expected to generate approximately $15 million to 20 million of annual run-rate cost synergies within 24 months from the closing of the Transaction. These synergies are expected to result from the economies of scale that will be realized following the Transaction, an optimized nationwide distribution network, and reduced operating expenses.

- **Strengthens best-in-class proprietary owned brands and exclusive third-party brand offerings**: As the leading supplier of premier consumer brands and products, the combined company will have a diversified and highly complementary customer product offering, including: consumption devices, vaporizers and accessories; supplies and child-resistant packaging; papers and wraps; and complementary solvents and natural products. In addition, the combined company will offer curated proprietary owned brands, including packaging innovator Pollen Gear™, VIBES™ rolling papers, Marley Natural™ Accessories; K.Haring Glass Collection, Aerospaced grinders, Eyce specialty silicone smoking products, and Higher Standards, which offers both an upscale product line as well as an innovative retail experience with flagship stores located in Chelsea Market, New York and Malibu, California. The combined company will also have third-party brand partnerships with a sizable portion of the industry's leading consumer brands. The combined company's product and service offerings are expected to deliver more value and greater choice to customers around the world.

- **Potential for robust organic growth through cross-selling opportunities**: The combined company will have the wide-ranging breadth of products and services needed to support the entire global cannabis industry. Greenlane's and KushCo's highly diverse complementary customer bases create strong opportunities for organic growth and are expected to deliver significant customer value through the introduction of Greenlane's owned brand products and exclusive third-party brands to KushCo customers, including top multi-state operators and licensed producers. Additionally, the C-CELL suite of products, currently sold exclusively by KushCo and other distributors in the United States, will become available to Greenlane's large B2B and B2C customer base.

- **Unique ability to drive industry innovation and premier product design and development**: As pioneers in the industry, both companies have established successful track records of furthering product innovation and partnering with trailblazing brands through all stages of the product lifecycle. With over 200 articles of Intellectual Property, the combined company will cultivate a strong innovation pipeline across a broad category

of product offerings and will be supported by an industry -leading and experienced product development and design team. As the industry evolves, the combined company will continue to leverage the deep relationships both companies have collectively developed with customers to enhance value for them as they grow, and ultimately provide the robust and innovative product lines their consumers are seeking.

- **Enhanced financial position and capital markets profile**: The combined company is expected to have pro forma revenue of over $250 million for the year ended December 31, 2020, and a pro forma market capitalization in excess of $350 million based on the respective share prices of Greenlane and KushCo as of market close on March 30, 2021. Following completion of the Transaction, the combined company is expected to generate pro forma revenue of between $310 million and $330 million for the year ended December 31, 2021 and will have a strong platform for accelerated organic growth that should be well-positioned to capitalize on attractive market opportunities as the industry continues to grow and evolve.

- **Experienced industry leaders**: The Transaction will bring together two of the pioneering cannabis ancillary product and services companies, with a combined 25 plus years of operating history. The expected post-Transaction management team has a combined several decades of proven growth strategy execution as well as significant CPG tenure to establish one of the most experienced teams in the ancillary cannabis industry. With this industry expertise, the management team intends to focus on driving stockholder value by executing on profitable growth opportunities and realizing the significant potential cost synergies.

Upon completion of the Transaction, KushCo's Co-Founder, current Chairman and Chief Executive Officer, Nick Kovacevich, will lead the combined company as Chief Executive Officer, and an Independent Chairman of the Board will be appointed at a later date. Greenlane's Bill Mote will serve as Chief Financial Officer, with Greenlane Co-founder Aaron LoCascio serving as President and Greenlane Co-founder Adam Schoenfeld serving as Chief Strategy Officer. The board of directors of the combined company will consist of seven members, four of whom are current Greenlane directors, including Aaron LoCascio, and Adam Schoenfeld, three of whom are current KushCo directors, including Nick Kovacevich. Greenlane and KushCo are confident that the leadership team and proposed board of directors of the combined company will provide a strong foundation for the combined company to accelerate growth and profitability. Additional senior leadership positions at the combined company will be named at a later date. The combined company will be headquartered in Boca Raton, Florida with a significant footprint in Southern California.

**Management Commentary**

"This transformative transaction is expected to create a broad and complementary platform that we expect to deliver substantial synergies at an important inflection point in the cannabis industry," said Aaron LoCascio, Chief Executive Officer and Co-Founder of Greenlane. "As an industry leader, the combined company will be well positioned to grow profitability and maximize value for all stockholders while also providing enhanced product offerings and expanded ancillary services to our valued customer bases. We are thrilled to be working with the talented and experienced KushCo team, and together we will continue to drive innovation and excellence in the space. Since Greenlane's founding in 2005, we have been at the forefront of the cannabis industry, and today we take the next step in our continued evolution."

"We're excited to create a leading, innovative supplier of cannabis ancillary products serving the most valuable segments of the supply chain," said Nick Kovacevich, KushCo's Co-founder, Chairman, and Chief Executive Officer. "For more than 10 years, KushCo has proudly pioneered this industry, creating substantial value for our customers, employees, partners, and stockholders. Now, we have reached a critical time in our industry where the leading operators are increasingly looking to partner with companies in the ancillary space who can reliably support their rapid expansion for years to come. We greatly admire the product portfolio that the Greenlane team has built, and we are excited to work with them to cross-sell to our complementary customer bases and execute on the attractive growth opportunities ahead."

**Additional Transaction Details**

The completion of the Transaction is subject to applicable regulatory approvals, including by Nasdaq, in addition to certain customary closing conditions, as well as approval by holders of a majority of the shares held by the existing Greenlane stockholders, other than Jacoby & Co. LLC and its affiliates and the chief executive officer, chief strategy officer, chief financial officer, chief operating officer and general counsel of Greenlane, at a special meeting of stockholders expected to take place in the late second quarter or early third quarter of 2021. The Transaction is also subject to approval by a majority of KushCo shareholders.

The majority stockholder of Greenlane, which is an affiliate of two directors of Greenlane, has entered into a support agreement with Greenlane and KushCo, pursuant to which it has agreed to support and vote 100% of its voting power in favor of certain actions required to consummate the Transaction.

Certain directors and stockholders of KushCo, which collectively own approximately 12.5% of the shares of KushCo's common stock, have entered into support agreements with Greenlane, pursuant to which they have agreed to support and vote in favor of the Transaction.

Management of Greenlane and KushCo expects the Transaction to close in the late second quarter or early third quarter of 2021, subject to the satisfaction or waiver of all conditions in the agreement, including the receipt of all necessary approvals.

**Advisors**

Canaccord Genuity Corp. is acting as financial advisor to the Special Committee of Greenlane's board of directors. Potter Anderson & Corroon LLP is acting as legal counsel to the Special Committee. Cowen is acting as financial advisor to Greenlane, and Morrison & Foerster LLP is acting as its legal counsel. Jefferies LLC is acting as exclusive financial advisor to KushCo and Reed Smith LLP is acting as its legal counsel.

\* \* \*

## II.     The Registration Statement Omits Material Information

24.     On May 25, 2021 Greenlane and KushCo announced the expiration of the 30-day waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 in connection with the Proposed Transaction.  Then on May 27, 2021, Defendants filed a materially incomplete and misleading Registration Statement with the SEC.  The special meeting of Greenlane stockholders to vote on the Proposed Transaction is forthcoming.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

A.  Materially Misleading Statements and Omissions Regarding Greenlane and KushCo's Financial Projections

25.  The Registration Statement fails to provide material information concerning financial projections by management of Greenlane and KushCo which were relied upon by the Board in recommending the Proposed Transaction, as well as Cannacord in its financial analysis to issue its fairness opinion. The Registration Statement discloses these management-prepared financial projections which are materially misleading. The Registration Statement states that Greenlane management prepared the "Greenlane Stand-Alone Projections" and KushCo management prepared the "KushCo Stand-Alone Projections."  These non-public financial projections were provided to the Board to support its recommendation of the Proposed Transactions, and to Cannacord in rendering its fairness opinions with respect to the Proposed Transaction. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that Greenlane and KushCo management provided to the Board and the financial advisors.  Registration Statement pages 175, 194-198.

26.  For the Greenlane Stand-Alone Projections, the Registration Statement provides values for non-GAAP financial metrics for fiscal years 2021 through 2025: (i) Adjusted EBITDA; (ii) Unlevered net income; and (iii) and Unlevered free cash flows. The Registration Statement, however, fails to provide: (i) the line items underlying Adjusted EBITDA; (ii) the line item underlying unlevered net income; (iii) the line items underlying unlevered free cash flows; and (iv) a reconciliation of all non-GAAP to GAAP metrics.  The omission of this information renders the projections disclose by Defendants a mis-leading half-truth and thereby a direct violation of Regulation G and consequently Section 14(a). Registration Statement 196.

27.  For the KushCo Stand-Alone Projections, the Registration Statement likewise provides values for non-GAAP financial metrics for fiscal years 2021 through 2025: (i) Adjusted

EBITDA; (ii) Net Operating Profit After Tax ("NOPAT"); and (iii) and Unlevered Free Cash Flows. The Registration Statement, however, fails to provide: (i) the line items underlying Adjusted EBITDA; (ii) the line items underlying NOPAT; (iii) the line items underlying Unlevered Free Cash Flows; and (iv) a reconciliation of all non-GAAP to GAAP metrics.  The omission of this information renders the projections disclose by Defendants a mis-leading half-truth and thereby a direct violation of Regulation G and consequently Section 14(a). Registration Statement 197.

28.    When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate voting rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation, whether by a schedule or other understandable method, of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.    In the present case, Defendants' failure to disclose the line items used to calculate (i) Adjusted EBITDA for either company; (ii) Net operating profit for Greenlane; (iii) NOPAT for Kushco;  and (iv) Unlevered Free Cash Flow for either company KushCo or to provide the requisite reconciliation of all non-GAAP to GAAP metrics similarly renders the Registration Statement materially misleading.

30.    Investors are concerned, perhaps above all else, with the projections and cash flows of the companies in which they invest.  Under sound corporate finance theory, the market value of a company should be premised on the expected unlevered free cash flows of the

corporation. Accordingly, the question that the Company's shareholders need to answer in determining whether to vote in favor of the Proposed Transaction is clear:  Is the Merger Consideration fair compensation given Greenlane's projected cash flows?  Without the line items underlying Greenlane's unlevered free cash flows the Company's shareholders will not be able to properly assess this critical question and evaluate the fairness of the Merger Consideration.

31.     For this reason, Courts have recognized that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

32.     If a Registration Statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1124-1125 (8th Cir. 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).   Accordingly, Defendants have disclosed some of the information related to the projections relied upon by Cannacord, but have omitted crucial line items and reconciliations. Thus, Defendants' omission renders the projections disclosed on pages 196-197 of the Registration Statement misleading.

     B.     <u>Materially Incomplete and Misleading Disclosures Concerning s' Financial Analyses</u>

33.     With respect to Cannacord's *Discounted Cash Flow Analysis -- Greenlane*, the Registration Statement fails to disclose: (i) the line items used to calculate unlevered free cash

flow; (ii) the line items used to calculate EBITDA; (iii) the terminal values for Greenlane calculated by Cannacord; (iii) the inputs and assumptions underlying the use of terminal EBITDA multiple range of 9.0x – 11.0x; (iv) the inputs and assumptions underlying the discount rates ranging from 14.0% to 16.0%; (v) Greenlane's weighted cost of capital; and (vi) the line items underlying the estimates of annual contribution margin benefits and annual cost savings anticipated to be realized by the Merger ("Synergies") prepared by Greenlane and KushCo management. Registration Statement pages 184-185.

34.     With respect to Cannacord's *Discounted Cash Flow Analysis -- KushCo*, the Registration Statement fails to disclose: (i) the line items used to calculate unlevered free cash flow; (ii) the line items used to calculate EBITDA; (iii) the terminal values for Greenlane calculated by Cannacord; (iii) the inputs and assumptions underlying the use of terminal EBITDA multiple range of 9.0x – 11.0x; (iv) the inputs and assumptions underlying the discount rates ranging from 14.0% to 16.0%; (v) Greenlane's weighted cost of capital; (vi) the line items underlying the estimates Synergies prepared by Greenlane and KushCo management. Registration Statement pages 185-186.

35.     These key inputs to Cannacord's analysis of both Greenlane and KushCo are material to Greenlane shareholders, and their omission renders the summary of Cannacord's *Discounted Cash Flow Analysis -- Greenlane* and *Discounted Cash Flow Analysis -- KushCo* incomplete and misleading.  As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id.*  As Professor Davidoff

explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion *unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices*. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, Greenlane's shareholders cannot evaluate for themselves the reliability of Cannacord's *Discounted Cash Flow Analysis – Greenlane* and *Discounted Cash Flow Analysis -- KushCo*, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company or was the result of an unreasonable judgment by Cannacord, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

36.     With respect to Cannacord's *Publicly Traded Companies Analysis* for Greenlane and KushCo, the Registration Statement fails to disclose: (i) the line items used to calculate EBITDA for Greenlane and KushCo; (ii) the estimated or actual revenue for calendar year 2020 and projected revenue for each of calendar years 2021 and 2022 for each of the companies observed in the analysis; (iii) the projected EBITDA for calendar years 2021 and 2022 for each of the companies observed in the analysis; (iii) the projected growth rates for estimated or actual calendar year 2020 projected calendar years 2021 and 2022 for each of the companies observed in the analysis; and (iv) the EBITDA margin profiles for estimated or actual calendar

year 2020 projected calendar years 2021 and 2022 for each of the Companies observed in the analysis.  Registration Statement page 178-184.

37.     In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Registration Statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

40.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make

the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41.    The omission of information from a Registration Statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

42.    Defendants have issued the Registration Statement with the intention of soliciting the Company's common stockholders' support for the Proposed Transaction.   Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things: (i) financial projections for Greenlane and KushCo prepared by management of the two companies; and (ii) the key inputs for the financial analyses performed by Cannacord in support of its fairness opinion.

43.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's common stockholders although they could have done so without extraordinary effort.

44.    The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that the Board

and Greenlane's management all reviewed and assessed financial projections for Greenlane and KushCo, and further states that the Board considered the fairness opinion provided by Cannacord and the assumptions made and matters considered in connection therewith, which included financial projections for Greenlane and KushCo. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

45.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

46.    Greenlane is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

47.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the special meeting of the Company's stockholders. Plaintiff

has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     The Individual Defendants acted as controlling persons of Greenlane within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Greenlane, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Registration Statement contains the

unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

52.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and/or permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated:  June 23, 2021                                   **MONTEVERDE & ASSOCIATES PC**

   */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*